Note.—See under (1) 4 C. J. p. 890, 891, § 2861; 2 R. C. L. p. 211; 1 R. C. L. Supp. p. 448, 4 R. C. L. Supp. p. 93. (2) 14 C. J. p. 927, § 1444. (3) 14a C. J. p. 952, § 3169; anno. 39 L. R. A. (N. S.) 1032; L. R. A. 1915A, 606; 7 R. C. L. pp. 315, 316; 2 R. C. L. Supp. p. 353. (4) 14a C. J. p. 977, § 3217. (5) 14 C. J. p. 463, § 658.

---

## GRIFFIN et al. v. GALBRAITH et al.

No. 13546—Opinion Filed March 31, 1925.

Rehearing Denied March 16, 1926.

(Syllabus.)

1. **Process—Right to Show Falsity of Sheriff's Return.**

A party is not precluded by a sheroff's return of service from showing its falsity. This is true even though the plaintiff in the cause was not privy to the fraudulent or negligent act of the sheriff through which a false return was made.

2. **Same—Sufficiency of Proof.**

A sheriff's return showing service is prima facie evidence of service and cannot be impeached except upon proof that is clear and convincing.

3. **Appearance—Attorney's Lack of Authority to Appear.**

The unauthorized appearance of an attorney without his client's knowledge does not confer jurisdiction.

4. **Indians — Minor Allottees — Exclusive Jurisdiction of County Court—Invalidity of Conveyance of Inherited Lands by Minor.**

The provision of section 6 of an act of the Congress of May 27, 1908, 35 Stat. 312, "that the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma," embraces allotted lands inherited by such minor and applies to the inherited lands of a Creek freedman minor; and the district court is without jurisdiction to make valid a void conveyance executed by such minor.

5. **Same—Void Judgment of District Court Attempting to Validate Conveyance.**

Where the guardian ad litem or -next friend did not properly protect the rights of an infant nor did the court perform its duty in that regard and such judgment is fraudulently obtained, the infant cannot be estopped by reason of recitations in that judgment.

6. **Equity—Relief from Fraud.**

A court of equity is primarily for the purpose of relieving persons from the effects of fraud which binds them technically under the strict legal system; and it is well settled that a court of conscience will not hear a party to predicate a right upon fraud.

7. **Appeal and Error — Review of Equity Case—Reversal.**

In cases of equitable cognizance this court will consider the whole record and weigh the evidence to the end of determining whether or not the judgment of the lower court is supported by the facts before it, and if this court finds that the judgment is not so supported, it may reverse the cause and remand it, with directions to render the judgment that should equitably have been rendered in the first instance.

8. **Insufficiency of Evidence.**

Record examined, and evidence held insufficient to sustain judgment of court below.

Error from District Court, Okmulgee County; Mark L. Bozarth, Judge.

Action by H. H. Galbraith et al. against Clarence Griffin et al. to quiet title. Judgment for plaintiffs, and defendants bring error. Reversed and remanded, with directions.

Clark Nichols, W. L. Merwine, Neff & Neff, and J. L. Newhouse, for plaintiffs in error.

Burford, Miley, Hoffman & Burford, Blakeney & Ambrister, and John R. Ramsey, for defendants in error.

CLARK, J. On November 14, 1912, A. W. Culp and H. H. Galbraith, plaintiffs, instituted this action in the district court of McIntosh county, Okla., against Abe Griffin, Robert Griffin, Clarence Griffin, Elijah Griffin, and the Keystone Oil & Gas Company, defendants, to quiet title of plaintiffs in and to the southwest quarter, section 31, township 12 north, range 14 east. By various interpleaders, dismissals, and amendments, the parties became instituted as they now stand on this appeal: Clarence Griffin, Elijah Griffin, Laura Ward, Marion Porter, as administrator of the estate of Robert Griffin, deceased, and as the guardian of the estate of Arlone Griffin, a minor, plaintiffs in error; and H. H. Galbraith, Clyde E. Galbraith, Ray O. Galbraith, and Cora O. Craig, the American Refining Company, a corporation, and the Texas Company, a corporation, defendants in error.

It appears that the territory in which the land is situated was, by an act of the Legislature, made a part of Okmulgee county, and that upon the motion of plaintiffs the cause was transferred to the district court of Okmulgee county, where the cause was tried and judgment rendered in favor of the defendants in error. It is to reverse this judgment that the plaintiffs in error, Clarence Griffin et al., prosecute this appeal.

The material facts, concisely stated, are as follows: The land involved was the original allotment of Mollie Griffin, a Creek freedman, who died in 1904 and left surviving her as her only heirs at law Robert Griffin, Laura Griffin, Elijah Griffin, and Clarence Griffin, related to the deceased as brothers and sisters. They were minors on the date of the death of the deceased. The mother of Mollie Griffin having died prior to the death of the deceased, and Abe Griffin, the father of the deceased, was a noncitizen, and by reason of section 6 of the Supplemental Creek Agreement of June 30, 1902, was disqualified to inherit any part of the lands of the deceased allottee.

The litigation of this land commenced in April, 1909; this being the second appeal to this court on the third action involving the land allotted to Mollie Griffin.

It appears that in April, 1909, G. R. Ruby, who held deeds from Abe Griffin and Robert Griffin, commenced an action in the district court of McIntosh county, said cause being No. 184, to quiet title and for a partition of said land against Abe Griffin, Robert Griffin, Laura Griffin, Elijah Griffin, and Clarence Griffin, the last three being minors, as defendants named in the petition. There was no appearance by Abe Griffin, or Robert Griffin, and a formal appearance for the minors by the guardian ad litem appointed by the court.

The court, on the 22nd day of June, 1909, entered judgment decreeing that the plaintiff, G. R. Ruby, under the deed executed by Robert Griffin, became the owner of and entitled to one-fourth interest in the land, and that the other three-fourths interest was owned by Laura Griffin, Clarence Griffin, and Elijah Griffin, all minors, ordered a partition of the land, if possible, and appointed commissioners. The commissioners filed their report that the land could not be partitioned without manifest injury to the parties in interest and appraised said lands at $2.50 per acre.

G. R. Ruby filed an election with the court to take the land at the appraised value thereof, and the court entered an order approving the report of the commissioners filed, ratifying and confirming the election of the plaintiff, Ruby, to take the land, and directing the sheriff to execute and deliver deed conveying said land to Ruby.

In 1912, Mountjoy and Leith, as attorneys for the Griffin heirs, filed a petition in the district court of McIntosh county seeking to set aside the judgment rendered in Ruby's favor for partition of the land, same being cause No. 875.

During the pendency of this suit Galbraith and Culp purchased Ruby's interest in the land and were substituted as defendants. It appears from the evidence of M. L. Leith, member of the firm of Mountjoy and Leith, that the action to vacate and set aside the judgment was instituted by the firm of Mountjoy and Leith under employment solely by Abe Griffin; though the petition to vacate appears to have been verified by Laura Griffin, who was of age on the date of filing the same. However, the defendant, Laura Griffin, denied having ever verified the petition or of knowing anything about her father employing Mount-

joy and Leith to institute the action for vacating the judgment.

In the instant action, instituted by Galbraith and Culp to quiet their title to the land, the defendants, Laura Griffin, now Ward, Clarence Griffin and Elijah Griffin, minors, by N. B. Bradford, guardian ad litem, N. B. Bradford, as administrator of the estate of Robert Griffin, deceased, and Arlone Griffin, the child of Robert Griffin and heir at law to his estate, filed answer and cross-petition attacking the validity of the judgment rendered in favor of Ruby partitioning the land, upon the ground of fraud: First, that the Griffin heirs had never received any notice of the filing of the petition or rendering of the decree, in that the purported return of the deputy sheriff was false and fraudulent and that the court did not have jurisdiction of said parties. That the parties had a good and meritorious defense. Second, Ruby obtained the judgment fraudulently by alleging that he owned an interest in the property when in truth and in fact he had no interest therein. Third, that the deed obtained by Ruby from Robert Griffin was without consideration and the said Robert Griffin was a minor on the date of the execution of the said deed. That the land was appraised at $2.50 per acre, when, in fact, it was worth at least $10 per acre, or $1,600 for the entire tract.

The defendants, Griffin heirs, by way of reply to the answer of the plaintiffs to the cross-petition of defendants, assailed the validity of the judgment rendered in action No. 875 instituted by Abe Griffin, Robert Griffin, Laura Griffin, now Ward, and Clarence Griffin and Elijah Griffin, minors, by Abe Griffin, as next friend, against Galbraith and Culp to vacate the partition judgment rendered in favor of Ruby, upon the ground that Mountjoy and Leith, attorneys, were not authorized to institute said action on behalf of Robert Griffin and Laura Griffin and that the judgment entered in the case was an agreed judgment, the result of collusion between Ruby and the persons purporting to act for the plaintiffs in the action, and that the purported release of the Griffin heirs of their interest in the land, including the minors, was without consideration; that the court was without jurisdiction to render any judgment depriving said heirs of their interest in the land.

Upon a careful consideration of the record in the instant case it is quite clear that the right of the plaintiffs, Galbraith and Culp, to have their title quieted to the land depends upon the validity of the judgment rendered in the partition suit instituted by Ruby and under which the plaintiffs claimed to have acquired their title in the land. It is insisted that the judgment rendered in the action instituted by the Griffin heirs through ther father, Abe Griffin, to vacate said partition judgment and in which it was adjudicated the partition judgment was a valid existing judgment, that the court had jurisdiction of the parties and the subject-matter when said judgment was entered, and that it estops the defendants herein from attacking the Ruby judgment.

This court, in the case of Griffin et al. v. Culp et al., 68 Okla. 310, 174 Pac. 498, reversed the judgment of the district court first rendered in this cause sustaining the motion of the plaintiffs for judgment on the pleadings, and in the opinion delivered by Mr. Justice Rainey definitely determined that the answer and cross-petition of the Griffin heirs to the plaintiff's petition alleged sufficient facts, if true, to show that the judgment in the partition suit was rendered upon a return of the sheriff which was false and fraudulent to such an extent as to defeat the jurisdiction of the court to enter the judgment.

The question now comes before us, "Was the judgment of the court partitioning said lands and said proceedings sufficient to vest title in G. R. Ruby in the first cause?"

The record in the instant case discloses that the return of the deputy sheriff, Carr, purported to show service upon Robert Griffin, Laura Griffin, Elijah Griffin, and Clarence Griffin, was false and fraudulent, and that in truth and in fact no service was had upon any of said defendants.

The record further discloses that Robert Griffin had been absent from the county and the community in which he resided for a period of two years at the time said purported service was had upon him. and that he had not been heard of or seen since the time of his first disappearance, and was later adjudged dead, and an administrator appointed for his estate.

The evidence further discloses that no service was had upon said minors or upon the father. with whom said minors resided, nor upon any person having care and custody of said minors.

We must conclude that the district court of McIntosh county did not have jurisdiction to render the partition judgment, not having acquired jurisdiction of the defendants.

The record discloses that said fraudulent service was the result of the act of the deputy sheriff in conjunction with the act of the plaintiff Ruby, in having a false return prepared, which was later found in the case pinned to the original summons and purported service thereof. The record further discloses that the deed relied on by Ruby from Robert Griffin was taken while the said Robert Griffin was a minor and was void and of no effect, and at the time of the institution of the purported partition suit Ruby had no title or interest in and to the said lands he was attempting to have partitioned and acquire title to by partition.

We must conclude that the petition suit instituted by Ruby and under which he attempted to quiet title was fraudulent and of no effect and gave Ruby no title or interest in and to said lands, and that the same could be attacked in any court of competent jurisdiction and upon a proper hearing should have been set aside and declared null and void.

A court of equity should and will relieve against fraudulent service. The judgment may be impeached by showing that the defendant in a suit in which it was rendered was never served with process and that the return of the sheriff showing service was false and fraudulent. And in this case it was the result of fraudulent acts of the deputy sheriff and the plaintiff.

Plaintiffs in this case attack the character and reputation of the deputy sheriff who made this fraudulent return and attempt to show that said deputy sheriff attempted to procure from the said plaintiff, Ruby, funds to testify in the instant case. This strengthens plaintiffs in error's contention that the return made by said deputy was false and fraudulent.

Section 7 of article 2 of the Constitution of the state of Oklahoma provides:

"No person shall be deprived of life, liberty or property without due process of law."

To hold that a defendant could be deprived of his property without service, without his day in court, would be depriving him of property without due process of law, and in contravention of this section of the Constitution.

By the weight of authorities and the better reasoning, a court of equity has jurisdiction to vacate or otherwise relieve against a judgment in a cause at law in which the defendant was not served with process and of which suit he had no notice. And this is true even though the plaintiff in

the cause was not privy to the fraudulent or negligent act of sheriff through which a false return was made.

A suit in equity for relief against such a judgment is not a collateral attack upon a law court judgment, but is a direct attack upon the same. A sheriff's return valid on its face is prima facie evidence of service and should not be impeached except upon proof that is clear and convincing.

The record further discloses that at the time cause No. 184 was instituted and judgment rendered all of the Griffin heirs with the exception of Robert Griffin were minors.

This court has passed squarely on this proposition in a number of cases. In the case of Condit et al. v. Condit et al., 66 Okla. 215, 168 Pac. 456, this court said:

"Service of process, as required by statute, upon an infant defendant cannot be waived. No one is authorized to appear for him in an action prior to such service. His defense must be made by a guardian for the suit, whose appointment cannot be made until after service of summons in the action.

"A judgment rendered without jurisdiction of the person is no judgment at all. * * *" Pettis v. Johnston, 78 Okla. 277, 190 Pac. 681; Dubois v. Clark (Colo.) 55 Pac. 750; Hauswirth v. Sullivan et al. (Mont.) 9 Pac. 798; Newman v. Greeley State Bank, 92 Ill. App. 638; Vaule v. Miller, 69 Minn. 440, 72 N. W. 452; Dunklin v. Wilson, 64 Ala. 162; Ridgeway v. Bank of Tennessee, 30 Tenn. (11 Hump.) 523; Trager v. Webster, 174 Mass. 580, 55 N. E. 318; Hamblen v. Knight, 60 Tex. 36; Ryan v. Boyd, 33 Ark. 778; Kochman v. O'Neill, 102 Ill. App. 475, 66 N. E. 1047.

The record further discloses that at the time judgment in cause 184 was taken three of the Griffin heirs were minors, Laura Griffin, Elijah Griffin, and Clarence Griffin, and the lands involved in said action were lands of the Creek Nation and were inherited by the plaintiffs in error by virtue of their membership in what was known as the Creek Tribe of Indians.

Under and by virtue of the Act of Congress of May 27, 1908, 35 Stat. 312, chap. 199, said lands, being inherited lands, were restricted during minority and could only be conveyed by the approval of the county court under and by virtue of proper proceedings in said court.

We, therefore, conclude that the purported decree of partition rendered by the district court of McIntosh county, Okla., in

cause No. 184 was void and of no effect as to said minor heirs.

The plaintiffs in error being Creek freedmen and this being inherited lands, the question of minority being a restriction is not a new question, but has been passed on by this court in a number of well-considered opinions. Brewer v. Dodson, 60 Okla. 81, 159 Pac. 329; Brewer v. Perryman, 62 Okla. 176, 162 Pac. 791; Crow v. Hardridge, 73 Okla. 136, 175 Pac. 115.

It is contended by the defendants in error that cause No. 875 was instituted by Abe Griffin and to vacate said partition judgment, in which it was adjudicated the partition judgment was a valid existing judgment, that the court had jurisdiction of the parties and the subject-matter when said judgment was entered, and it estops the defendants herein from attacking the Ruby judgment.

An examination of the record discloses that the firm of Mountjoy and Leith were employed to institute said suit solely by Abe Griffin, and at the time said suit was instituted said attorneys had no authority from Laura Griffin or Robert Griffin to institute said suit, and the same was instituted and settled without the knowledge or consent of either Robert or Laura Griffin.

The record discloses that at the time said suit was instituted Robert Griffin had been absent from the county and had not been heard of for a period of about five years. Laura Griffin testified in the instant case that she did not authorize said suit and had no knowledge of same. We, therefore, hold that said Robert Griffin and Laura Griffin could not be bound by the unauthorized acts of the attorneys or parties purported to represent them.

The record further discloses that the defendants in cause No. 875, defendants in error in the instant case, filed a general denial to the petition of the plaintiffs, and that judgment was rendered for the plaintiffs, or in favor of the plaintiffs and against the defendants on the pleadings. The record further discloses that the firm of attorneys purported to represent said minors settled said cause and made no attempt to properly represent said minors, Elijah and Clarence Griffin; that the attorneys received the sum of $400 from the defendants in case No. 875 as settlement, and that after said sum was paid to said attorneys no further action was taken by them to protect the interest of said minors that they had assumed to represent.

This court in passing upon this question in the case of In re Sanders' Estate, 67 Okla. 3, 168 Pac. 197, says:

"It is the duty of courts to guard with jealous care the interests of minors in actions involving their rights. No presumption can be permitted against an infant, but, on the contrary, every presumption must be indulged in his favor, and a guardian ad litem or other person representing such minor must see to it that every question available is urged on behalf of said minor, and in case of a failure to discharge this duty, it becomes the imperative duty of the court to see that the infant's rights are protected."

The same policy was again expressed in the first paragraph of the syllabus in Bolling et al. v. Campbell, 36 Okla. 671, 128 Pac. 1091.

The action of the attorneys in this cause as disclosed by the record in attempting to compromise said suit was a fraud upon said minors and of no binding force or effect.

The fact that the interest of the minors was not properly protected by this guardian ad litem, or next friend, is patent, and the court in permitting a judgment to be entered against these minors violated likewise its duty to see that the guardian ad litem, or next friend, properly represents the interest of his ward.

We, therefore, conclude that the second action is not a bar to any of the parties, and the authorities herein cited are sufficient basis for the statement that minors are not bound by a judgment when their cause is not properly presented for consideration and the court does not protect them.

The court of equity is primarily for the purpose of relieving persons from the effects of a fraud which binds them technically under the strict legal system.

In this action the plaintiffs below, defendants in error, rely solely upon a series of fraudulent and irregular transactions, to the latter of which they, themselves, were participants.

In cases of equitable cognizance this court may consider the whole record and weigh the evidence to the end of determining whether or not the judgment of the lower court is supported by the facts before it, and if this court finds that the judgment is not so supported, and is against the clear weight of the evidence, it may reverse the cause and remand it, with directions to render the judgment that should equitably have been rendered in the first instance.

We are of the opinion that the trial court erred in rendering judgment for the plain-

tiffs under the evidence and facts before it, and the cause is therefore reversed and remanded, with directions to enter judgment for the Griffin heirs upon their cross-petitions, including an accounting to them for the rents and profits taken from the land by the defendants in error.

NICHOLSON, C. J., and BRANSON, MASON, PHELPS, LESTER, HUNT, and RILEY, JJ., concur.